UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SKYLAR INTRAVAIA, by her parents and
natural guardians JENNIFER INTRAVAIA and
ROBERT INTRAVAIA, individually,

               Plaintiffs,             **MEMORANDUM AND ORDER**
                                                    12 CV 642 (DRH) (AKT)
     - against -

ROCKY POINT UNION FREE SCHOOL
DISTRICT, MICHAEL F. RING, Superintendent,
DAVID PEARL, ESQ.,

               Defendants.
-------------------------------------------------------------X
**APPEARANCES:**

**JOHN RAY & ASSOCIATES**
Attorneys for Plaintiffs
122 N. Country Road
Miller Place, NY 11764
By:    John W. Ray, Esq.
        Vesselin V. Mitev, Esq.

**AHMUTY, DEMERS & McMANUS, ESQS.**
Attorneys for Rocky Point Union Free School District Defendants
200 I.U. Willets Road
Albertson, NY 11507
By:    Lourdes M. Ventura, Esq.
        Maureen Casey, Esq.

**HAMBURGER, MAXSON, YAFFE, WISHOD & KNAUER, LLP**
Attorneys for Defendant David Pearl, Esq.
225 Broadhollow Road, Suite 301E
Melville, NY 11747
BY:    David N. Yaffe, Esq.

**HURLEY, Senior District Judge:**

Plaintiffs Jennifer and Robert Intravaia bring this action individually and on behalf of their disabled infant daughter, Skylar Intravaia ("Skylar"), against the Rocky Point Union Free School District ("School District"), Superintendent Michael F. Ring ("Ring"), and David Pearl, Esq. ("Pearl") ("collectively, the "defendants"), seeking to redress violations of their rights under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, the American with Disabilities Act ("ADA"), 42 § U.S.C. 12101, *et seq.*, and 42 U.S.C. § 1983. Plaintiffs allege that defendants failed to provide Skylar with a free and appropriate public education ("FAPE") based on their failure to provide required special education services and by initiating an impartial hearing in order to block and frustrate an investigation by the New York State Education Department ("NYSED").

Presently before the Court are the defendants' respective motions to dismiss. The School District and Ring (hereafter, the "School District defendants") move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(1) alleging that the Court lacks subject-matter jurisdiction on the grounds that plaintiffs have failed to exhaust their administrative remedies pursuant to the IDEA. Defendant Pearl moves to dismiss the Complaint pursuant to Rule 12(b)(1) on the same grounds as the School District defendants, and in the alternative, pursuant to Rule 12(b)(6) for failure to state a claim against him. Contemporaneous with his motion to dismiss, defendant Pearl also requests that plaintiffs and their attorneys be sanctioned under Rule 11. For the reasons that follow, the defendants' motions to dismiss are GRANTED and defendant Pearl's motion for sanctions is DENIED without prejudice.

## BACKGROUND

Skylar, a disabled student attending school within the School District, is classified as having autism. (Compl. ¶¶ 3, 15.) More specifically, Skylar is a high-functioning eighth-grader who has Asperger's syndrome, "which is an autism spectrum disorder characterized by high cognitive function and low social/behavioral function." (*Id.* ¶ 20.) In light of her classified disability, the School District was required to provide Skylar with special education and related services, set forth in an Individualized Education Program ("IEP"). (*Id.* ¶¶ 13, 21.) Skylar's IEPs, dating back to 2002, included such services as social worker counseling, summer therapy sessions, and special class learning labs and aides. (*Id.* ¶ 22.) As of October 4, 2010, Skylar's IEP specifically provided that she receive: a daily individual aide; weekly group counseling; monthly one-to-one counseling; and parent counseling and training four times yearly. (*Id.* ¶ 23.) As of February 15, 2011, Skylar's IEP remained the same, with the exception of the individual aide, which was removed with the plaintiffs' consent. (*Id.* ¶ 24.) Thereafter, plaintiffs claim that defendants failed to provide the necessary services they were required to provide Skylar under her IEP. (*Id.* ¶¶ 25-26.)

For example, plaintiffs allege that in 2011, defendants: (1) failed to provide group services to Skylar on at least seven occasions; (2) removed the director of special education without notification; (3) eliminated all special education coordinators without notification; (4) removed the full-time autism consultant, Denise Valvo, who worked individually with Skylar; (5) hired an autism consultant to work one day per week who has no individual contact with Skylar; (6) divided Ms. Valvo's former responsibilities and duties between the school's social worker and psychologist; (7) hired unqualified counselors who have no training on how to work

3

with autistic children; (8) punished Skylar for her disability by sending her back to class on more than one occasion for failing to answer a question correctly during a counseling session; (9) failed to coordinate and communicate with plaintiffs, resulting in Skylar having missed over thirty days of gym, a required class; (10) failed to adhere to the services that the School District was required to provide to Skylar, per her IEP; and (11) provided "progress reports" that do not properly measure the goals set by Skylar's IEP. (Compl. ¶ 26.)

On October 20, 2011, Jennifer Intravaia wrote to defendant Ring to advise him of the above issues and concerns. The following day, District Interim Special Education Coordinator Andrea Moscatiello ("Moscatiello") responded by stating that Skylar's "services are in place and remain the same" and to contact her "sponsor teacher." (*Id.* ¶¶ 27-28.) In November 2011, Jennifer Intravia again raised her issues and concerns, this time at a Board of Education meeting where she met with defendant Ring, Moscatiello, and other School District officials regarding compliance with Skylar's IEP. (*Id.* ¶¶ 29-30.) Jennifer Intravia attended another Board of Education meeting on December 19, 2011, to once more implore the School District to reinstate Skylar's services, including the full-time autism consultant. (*Id.* ¶ 34.) On December 29, 2011, Jennifer Intravaia prepared and filed a complaint with NYSED detailing the above violations. (*Id.* ¶ 38.)

On January 9, 2012, counsel for the School District, David Pearl, Esq., wrote to plaintiffs indicating that his letter "serve[s] as a formal request for an impartial hearing" regarding the allegations "that the School District is failing to provide your daughter, Skylar, with a Free and Appropriate Public Education ('FAPE') and also continuously failing to provide related services required on Skylar's Individualzed Education Program ('IEP')." (Ring Aff., Ex. N.) In a letter

dated January 13, 2012, the NYSED also wrote to plaintiff indicating the following:

> Federal and State regulations require that the State set aside (not proceed with) an investigation of allegations contained in a State complaint if any of the allegations are currently being addressed in an impartial hearing or an appeal of the hearing decision. NYSED has determined that all of the allegations are currently involved in a due process hearing. . . . In accordance with Part 300 of the Code of Federal Regulations and Part 200 of the Regulations of the Commissioner of Education relating to the education of students with disabilities, NYSED may not investigate these issues while they are simultaneously involved in due process procedures.

(Ring Aff., Ex. Q.) The letter further stated that "[u]pon completion of the impartial hearing or appeal, if the issue(s) has not been addressed in the decision, a complainant may contact NYSED to reopen the State Complaint investigation on the issue(s), thus establishing a new 60 calendar-day investigation." (*Id.*)

Plaintiffs assert that the "impartial hearing" was intended by defendants to interfere with and block the investigation by the NYSED, as well as to allow defendants to continue to not provide the services required under Skylar's IEP. (Compl. ¶ 44.) In fact, plaintiffs' counsel sent a letter to Ring on January 18, 2012, indicating that plaintiffs "respectfully object to the conduct of any 'Impartial Hearing' initiated by the [School] District," that the "proceeding is not lawful," and that plaintiffs "will not participate in this illegal process." (Ring Aff., Ex. R.) Defendant Pearl sent a response letter dated January 26, 2012, which stated that the "impartial hearing was to allow a neutral arbiter to consider the allegations," and that such a hearing "is lawful and authorized pursuant to 8 NYCRR 200.5," but since plaintiffs have chosen not to participate, "the School District will withdraw its request for an impartial hearing, without prejudice." (*Id.*, Ex. S.) Plaintiffs filed the instant action on February 9, 2012.

## DISCUSSION

I. *Defendants' Motions to Dismiss*

    *A.    Legal Standard*

"A court faced with a motion to dismiss pursuant to both Rules 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits and, therefore, an exercise of jurisdiction."[1] *Magee v. Nassau Cnty. Med. Ctr.*, 27 F. Supp. 2d 154, 158 (E.D.N.Y. 1998) (citing *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990)). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.*; *accord Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). "When considering a motion to dismiss for lack of subject matter jurisdiction . . . a court must accept as true all material factual allegations in the complaint. But, when the question to be considered is one involving the jurisdiction of a federal court, jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998) (internal citation omitted). The Court may also "look to evidence outside the pleadings . . . in resolving the question of jurisdiction." *Anglo-Iberia Underwriting Mgmt. v. P.T. Jamsostek*, 600 F.3d 171, 175 (2d Cir. 2010); *see also Makarova*,

---

[1] Although defendant Pearl moves to dismiss pursuant to Rule 12(b)(1) and 12(b)(6), the Court need not consider his Rule 12(b)(6) arguments in light of the findings below regarding subject-matter jurisdiction.

201 F.3d at 113 ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings.").

### B. The IDEA and Exhaustion Requirement

The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education . . . ." 20 U.S.C. § 1400(d)(1)(A). "In passing IDEA, 'Congress sought primarily to identify and evaluate handicapped children, and to provide them with access to free public education.'" *Scaggs v. N.Y. State Dep't of Educ.*, 2007 WL 1456221, at *3 (E.D.N.Y. May 16, 2007) (quoting *Bd. of Educ. v. Rowley*, 458 U.S. 176, 200, 102 S. Ct. 3034, 73 L. Ed. 2d 690 (1982)). The "central mechanism by which public schools ensure that their disabled students receive a free appropriate public education" is an "individualized education program," or "IEP." *Polera v. Bd. of Educ.*, 288 F.3d 478, 482 (2d Cir. 2002); *see also* 20 U.S.C. § 1414(d). An IEP is "jointly develop[ed]" by a child's parents and educators, *see Polera*, 288 F.3d at 482, and includes, *inter alia*, a written statement of the child's "present levels of academic achievement and functional performance," "measurable annual goals," "the child's progress toward meeting the annual goals," and a statement of the services "to be provided to the child," 20 U.S.C. § 1414(d).

The IDEA provides "an opportunity for any party to present a complaint with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A); *see also* 8 N.Y.C.R.R. § 200.5(i)(1) ("A parent or school district may file a due process complaint with respect to any matter relating to the identification, evaluation or educational placement of a student with a disability, or a student suspected of having a disability, or the provision of a free

7

appropriate public education to such student."). Whenever such a complaint is received, either the parents or the local education agency is provided "an opportunity for an impartial due process hearing, which shall be conducted by the State educational agency or by the local education agency, as determined by State law or by the State educational agency." 20 U.S.C. § 1415(f)(1)(A). In addition, the IDEA provides that "[i]f the hearing required by subsection (f) is conducted by a local educational agency, any party aggrieved by the findings and decision rendered in such a hearing may appeal such findings and decision to the State educational agency." 20 U.S.C. § 1415(g)(1). In New York, the following two-tiered administrative process is followed:

> First, an impartial hearing officer is selected from a list of certified officers and appointed by the local board of education or the competent state agency to conduct the initial hearing and issue a written decision. That decision can then be appealed to a state review officer of the New York Education Department.

*Cave v. East Meadow Union Free Sch. Dist.*, 514 F.3d 240, 245 (2d Cir. 2008); *see also* 20 U.S.C. §§ 1415(f)-(g); N.Y. Educ. Law § 4404(1)-(2); 8 N.Y.C.R.R. §§ 200.5(j)-(k).

"It is well settled that the IDEA requires an aggrieved party to exhaust all administrative remedies before bringing a civil action in federal or state court . . . ." *J.S., ex. rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 112 (2d Cir. 2004); *see also Coleman v. Newburgh Enlarged City Sch. Dist.*, 503 F.3d 198, 203 (2d Cir. 2007) (stating that the IDEA's "exhaustion requirement is grounded in 20 U.S.C. § 1415(i)(2)(A), which provides a cause of action to those parties who are 'aggrieved' by a 'final' decision of either an impartial due process hearing officer, if the state does not have an appeals process, or the state educational agency, if it does"). Courts have noted that "[t]he purpose of the exhaustion rule is to 'channel disputes related to the education of

disabled children into an administrative process that could apply administrators' expertise in the area and promptly resolve grievances.'" *Cave*, 514 F.3d at 245-46 (quoting *Polera*, 288 F.3d at 487); *see also Polera*, 288 F.3d at 489 ("[T]he exhaustion requirement is predicated on Congress's belief, expressed through the statutory scheme, that administrative agencies can 'get it right': that the agencies themselves are in the optimal position to identify and correct their errors and to fine-tune the design of their programs."). "A plaintiff's failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction." *Polera*, 288 F.3d at 483 (citing *Hope v. Cortines*, 69 F.3d 687, 688 (2d Cir. 1995)); *see also Cave*, 514 F.3d at 245; *Coleman*, 503 F.3d at 204-05.

Finally, "complainants must overcome this significant procedural hurdle not only when they wish to file a suit under the IDEA itself, but also whenever they assert claims for relief *available* under the IDEA, regardless of the statutory basis of their complaint." *Cave*, 514 F.3d at 246 (emphasis in original); *see also* 20 U.S.C. § 1415(l) ("Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under . . . other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under [the IDEA]."); *Polera*, 288 F.3d at 481("[P]otential plaintiffs with grievances related to the education of disabled children generally must exhaust their administrative remedies before filing suit in federal court, even if their claims are formulated under a statute other than the IDEA (such as the ADA or the Rehabilitation Act).").

Both defendants argue that the Court lacks subject-matter jurisdiction in light of plaintiffs' failure to exhaust the administrate remedies provided for under the IDEA. Plaintiffs do not dispute that they failed to exhaust the administrative remedies available to them under the IDEA prior to filing the instant action. Nor is there a dispute that plaintiffs had to exhaust their administrative remedies notwithstanding the fact that claims were brought under federal statutes in addition to the IDEA. Instead, plaintiffs argue that defendants blocked and effectively denied plaintiffs' ability to exhaust their administrative remedies by initiating an "impartial hearing" while knowing that doing so would cause the State to cease its own investigation. In addition, plaintiffs claim that exhaustion is excused where it is alleged that a school has failed to implement services that were specified or otherwise clearly stated in an IEP. Finally, plaintiffs allege, in passing, that they do not have to exhaust their administrative remedies in this case in light of defendants' "serial" failure to provide Skylar and other similarly situated special needs students with the services required by law. Since plaintiffs do not contest that they did not exhaust the IDEA's administrative remedies, the question then becomes whether, under the present circumstances, plaintiffs were excused from exhausting their administrative remedies and allowed to bring this lawsuit. This question the Court answers in the negative.

### C. *Futility Analysis*

The IDEA's "exhaustion requirement does not apply 'in situations in which exhaustion would be futile.'" *Coleman*, 503 F.3d at 205 (quoting *Polera*, 288 F.3d at 488). "To show futility, a plaintiff must demonstrate that 'adequate remedies are not reasonably available' or that 'the wrongs alleged could not or would not have been corrected by resort to the administrative hearing process.'" *Id.* (quoting *J.G. by Mrs. G. v. Bd. of Educ.*, 830 F.2d 444, 447

(2d Cir. 1987), *and Heldman v. Sobol*, 962 F.2d 148, 158 (2d Cir. 1992)). "The party seeking to avoid exhaustion bears the burden of showing futility." *Cave*, 514 F.3d at 249; *accord Coleman*, 503 F.3d at 205. In determining whether a plaintiff should be subject to exhaustion, the Second Circuit instructs courts "to consider whether administrative review would further the goals of developing facts, making use of available expertise, and promoting efficiency." *J.S., ex. rel. N.S.*, 386 F.3d at 113.

Plaintiffs first claim that exhaustion is not applicable because defendants denied plaintiffs the ability to exhaust their administrative remedies by initiating an impartial hearing after they filed a complaint with the NYSED. Although the Second Circuit has suggested that plaintiffs are not subject to the exhaustion requirement when they are denied the opportunity to pursue administrative remedies by the defendants, *see, e.g.*, *J.G. by Mrs. G.*, 830 F.2d at 447; *Levine v. Greece Cent. Sch. Dist.*, 353 F. App'x 461, 464-65 (2d Cir. 2009), there is nothing alleged in the Complaint which supports the position that defendants acted in a way that prevented plaintiffs from pursuing such remedies. To the contrary, the allegations in the Complaint and the arguments contained in plaintiffs' opposition papers evidence their overall confusion regarding the administrative process.

One of the fatal flaws in plaintiffs' argument is the fact that filing a complaint with the NYSED, which is permitted under 8 N.Y.C.R.R. 200.5(l)(1), is not considered an administrative remedy that must be exhausted prior to bringing a civil action. Before an aggrieved party may bring a lawsuit, a complaint must have been brought before an impartial due process hearing under Section 1415(f), and the decision from this impartial hearing must then be appealed to the State education agency under Section 1415(g). *See* 20 U.S.C. § 1415(i)(2); *see also* N.Y. Educ.

11

Law §§ 4404(1)-(2); 8 N.Y.C.R.R. §§ 200.5(j)-(k). If filing a complaint with the NYSED had been considered an administrative remedy that was part of the exhaustion process, it would have been included in these statutes. Instead, the very regulation which gives plaintiffs the authority to file such a complaint further dictates that the NYSED "shall set aside any part of the complaint that is currently being addressed in an impartial hearing held pursuant to Education Law section 4404." 8 N.Y.C.R.R. 200.5(l)(2)(vii).

Since the filing of a complaint with the NYSED has no bearing on the administrative process that needs to be exhausted, the fact that defendants initiated an impartial hearing shortly after Jennifer Intravaia filed her complaint did not, as plaintiffs allege, block or deny them from exhausting the requisite administrative remedies before filing a civil action. If anything, by initiating an impartial hearing regarding the very violations which are the subject of the instant action, defendants started the administrative process that plaintiffs had to complete before coming to court.[2] Had plaintiffs went through with the impartial hearing, and then appealed to a

---

[2] The Court finds it troubling that although plaintiffs asserted claims on the basis that defendants "unlawfully" initiated the impartial hearing, Compl. ¶¶ 50, 56, they now maintain that "[i]t is beside the point . . . that the District was, as it contends, allowed to seek such an "impartial hearing." (Pls.' Opp'n to Def. Pearl's Mot. at 10.). While the purported unlawfulness of the impartial hearing is not germane to the determination of whether defendants frustrated plaintiffs from exhausting their administrative remedies, it is noteworthy that such a claim is insubstantial. The IDEA does not preclude a school district from bringing a due process complaint, *see* 20 U.S.C. § 1415(b)(6) (stating that the procedures all state and local educational agencies are required to establish and maintain include "[a]n opportunity for *any party* to present a complaint . . . .") (emphasis added), and the applicable New York statute explicitly states that either "[a] parent *or school district* may file a due process complaint with respect to any matter relating to . . . the provision of a free and appropriate public education to [a student with a disability], 8 N.Y.C.R.R. 200.5(i)(1) (emphasis added). Moreover, whenever a complaint has been received, "the parents *or the local educational agency* involved in such complaint shall have an opportunity for an impartial due process hearing . . . ." 20 U.S.C. § 1415(f)(1)(A) (emphasis added). Therefore, and contrary to the plaintiffs' contention that initiating the impartial hearing was "unlawful," defendants were following the very due process procedures put

12

state review officer any decision by the hearing officer that was adverse to them, then plaintiffs would have been in a position to file this action.

Next, plaintiffs argue that they should be excused from exhausting their administrative remedies because "[t]he Complaint sets forth with specificity each instance that the District failed to provide the IEP-required services to Skylar." (Pls.' Opp. to Def. Pearl's Mot. to Dismiss at 11.) While courts recognize an exception to exhaustion where a defendant fails to implement the provisions of a particular student's IEP, the exception is applied narrowly. *See Levine*, 353 F. App'x at 465. As explained by the Second Circuit:

> Our cases that have allowed plaintiffs to avoid the exhaustion requirement due to a school district's failure to implement a student's IEP have done so only in narrow situations in which the plaintiff's claim is limited to the allegation that "a school has failed to implement services that were specified or otherwise clearly stated in an IEP."

*Id.* (quoting *Polera*, 288 F.3d at 489.) In narrowly construing the exception, the Second Circuit recognized that "a plaintiff could plausibly frame any IEP-related claim as one of 'implementation' and thereby sidestep the IDEA's exhaustion requirement." *Polera*, 288 F.3d at 489.

In this case, the services specified in Skylar's IEP were weekly group counseling, monthly one-to-one counseling, and parent counseling and training four times a year. (Compl. ¶ 23-24; Ring Aff., Ex. I.) Of the list of purported violations by defendants, the only allegations that implicate the services contained in Skylar's IEP include the claim that defendants "[f]ailed to adhere to the services that the District was required to provide Skylar, per her IEP" and that

---

in place to protect a disabled child's rights.

defendants "[f]ailed to provide group services to Skylar on at least seven occasions." (Compl. ¶ 26.) It follows then that plaintiffs' Complaint not only contains allegations that defendants failed to provide Skylar services that are contained in her IEP but also that defendants failed in various other ways to provide Skylar with a FAPE. *See Gardner v. Uniondale Public Sch. Dist.*, 2008 WL 4682442, at *10 (E.D.N.Y. Oct. 21, 2008) (finding failure to implement exception inapplicable where plaintiffs' allegations "do not *solely* relate to a failure of implementation, as is required for futility to exist"). Since the Complaint's allegations are far broader than just defendants' failure to implement specific requirements of Skylar's IEP, plaintiffs' are not excused from exhausting their administrative remedies.

Finally, plaintiffs claim that exhaustion does not apply because "the Complaint pleads with the requisite specificity that the School District failed, serially, to provide Skylar 'and other similarly situated special needs students' with the services that were required to be provided by law." (Pls.' Opp. to Def. Pearl's Mot. to Dismiss at 12.) Courts have excused exhaustion of administrative remedies in "cases involving systemic violations that could not be remedied by local or state administrative agencies 'because the framework and procedures for assessing and placing students in appropriate educational programs were at issue, or because the nature and volume of complaints were incapable of correction by the administrative hearing process.'" *Cave*, 514 F.3d at 249 (quoting *J.S. ex rel. N.S.*, 386 F.3d 114).

As best as the Court can discern, plaintiffs' one-sentence conclusory assertion attempts to argue that because of the volume of complaints the administrative hearing process would be incapable of providing adequate relief.[3] However, the mere fact that certain allegations in the Complaint assert that the rights of "other similarly situated special needs students" were also violated does not automatically turn utilization of the administrative hearing process into an act of futility. Plaintiffs fail to plead any facts indicating how many special needs students – or more specifically, autistic children – were affected by defendants' purported violations. The present circumstances are a far cry from those in *Jose P. v. Ambach*, 669 F.2d 865, 869 (2d Cir. 1982), in which the Second Circuit determined that resorting to administrative remedies would be futile in light of the thousands of appeals at issue. As such, the Court finds plaintiffs' citation-free argument to be unpersuasive.

In sum, plaintiffs have failed to meet their burden of showing that it would have been futile for them to resort to the administrative hearing process. Thus, plaintiffs have ultimately failed to meet their burden in proving that subject-matter jurisdiction exists.

## II.     *Defendant Pearl's Rule 11 Motion*

In addition to moving to dismiss the Complaint, defendant Pearl also seeks to impose sanctions on plaintiffs and their attorneys "for intentionally misleading this Court by omitting material facts, and by frivolously naming Mr. Pearl as a defendant." (Def. Pearl Mem. at 21.)

---

[3] To the extent that plaintiffs' one-sentence contention attempts to invoke the exhaustion exception based on the framework and procedures for assessing and placing students in appropriate educational programs, such an argument would fail. The Complaint fails to allege a system-wide violation of the procedural rights accorded by IDEA or a district-wide policy of discriminating against disabled students. *See Cave*, 514 F.3d at 250.

Without addressing the motion's merits, the Court denies the motion as procedurally defective.

Rule 11 requires that a motion for sanctions "be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). Further, once such a motion is served, it may not be filed with the Court "if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." *Id.* Any motion seeking Rule 11 sanctions that does not comply with these provisions must be denied. *See Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008) (affirming district court's denial of Rule 11 motion where defendants "failed to make a separate motion for sanctions under Rule 11"); *Castro v. Mitchell*, 727 F. Supp. 2d 302, 306 (S.D.N.Y. 2010) ("A motion that fails to comply with the [21-day] safe harbor provision of Rule 11 must be denied.").

In this case, defendant Pearl served and filed one motion which sought to dismiss all claims in the Complaint and to impose sanctions pursuant to Rule 11. (*See* Def. Pearl's Notice of Mot. (Docket No. 12).) Despite this clear procedural violation, Pearl claims that the Court waived the requirement that a party must make a motion for sanctions separately from any other motion when it set a unified briefing schedule for both his motion for sanctions and his motion to dismiss. This contention fails as a matter of fact and as a matter of law. The briefing schedule defendant Pearl is referring to was set forth in an electronic Order dated April 3, 2012. This Order stated the following:

> The Court is in receipt of defendant Pearl's request for a premotion conference in anticipation of a motion to dismiss, as well as plaintiffs' response. The Court hereby waives its premotion conference requirement and sets the following briefing schedule for defendant Pearl's motion: defendant shall *serve* (but not file) his

16

> motion by May 1, 2012; plaintiffs shall *serve* (but not file) their opposition by May 29, 2012; and by June 12, 2012, defendant shall serve his reply, if any, and electronically file the fully briefed motion (including plaintiffs' opposition) with courtesy copies of all papers to Chambers.

(*See* Electronic Order dated Apr. 3, 2012.) Although Pearl's letter request for a premotion conference indicated that he was seeking to move to dismiss and for sanctions, the Court's April 3, 2012 Order only addressed his anticipated motion to dismiss.[4] Thus, the April 3, 2012 Order did not override the procedural requirements a party must follow before filing a motion for sanctions under Rule 11. In any event, this Court lacks the authority to waive the procedural requirements of Rule 11. *See Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 142 (2d Cir. 2002) ("The district court's awarding of sanctions . . . in contravention of the explicit procedural requirements of Rule 11 was . . . an abuse of discretion."). As such, defendant Pearl's motion for sanctions is denied without prejudice.[5]

---

[4] To the extent the April 3, 2012 Order was not coextensive with the relief defendant Pearl sought, there was no impediment to him requesting a clarification from the Court.

[5] Counsel for defendant Pearl indicates that "[s]hould the Court nonetheless require a separate motion, we are prepared to file same." (Pearl Reply at 10.) Parenthetically, it is questionable whether defendant Pearl can now satisfy the 21-day "safe harbor" provision of Rule 11 since plaintiffs no longer have the ability to withdraw or correct the challenged claims and contentions as the Complaint has been dismissed. *See, e.g.*, *In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003) ("Although Rule 11 contains no explicit time limit for serving the motion, the 'safe harbor' provision functions as a practical time limit, and motions have been disallowed as untimely when filed after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission."); *Barber v. Miller*, 146 F.3d 707, 710-11 (9th Cir. 1998) (Rule 11 sanction disallowed where motion filed after complaint dismissed); *Ridder v. City of Springfield*, 109 F.3d 288, 295 (6th Cir. 1997) ("If the court disposes of the offending contention before the twenty-one day 'safe harbor' period expires, a motion for sanctions cannot be filed with or presented to the court."). It is expected that defendant Pearl will address this issue should he still seek sanctions against plaintiffs and their counsel.

## *CONCLUSION*

For the reasons set forth above, defendants' motions to dismiss for lack of subject-matter jurisdiction are GRANTED and defendant Pearl's motion for sanctions is DENIED without prejudice. The Clerk of Court is directed to mark this case as closed. Should defendant Pearl still wish to pursue his motion for sanctions, then counsel is directed to file a pre-motion letter pursuant to the Court's individual practice rules.

**SO ORDERED.**

Dated: Central Islip, New York
January 30, 2013

/s/
Denis R. Hurley
Unites States District Judge