UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
SKYLAR INTRAVAIA, by her parents and
natural guardians, JENNIFER INTRAVAIA and
ROBERT INTRAVAIA, individually,

         Plaintiffs**,**  **MEMORANDUM & ORDER**
                12-CV-0642 (DRH)(AKT)

  v.

ROCKY POINT UNION FREE SCHOOL
DISTRICT, MICHAEL F. RING,
SUPERINTENDENT, DAVID PEARL, ESQ.,

         Defendants.
----------------------------------------------------------------X

**APPEARANCES:**

**For the Plaintiffs:**
**JOHN RAY & ASSOCIATES**
122 North Country Road
Miller Place, New York 11764
By: Vesselin Mitev, Esq.

**For Defendant David Pearl, Esq.:**
**HAMBURGER, MAXSON, YAFFE,**
**KNAUER & McNALLY, LLP**
225 Broadhollow Road, Suite 301E
Melville, New York 11747
By: David N. Yaffe, Esq.

**HURLEY, Senior District Judge**:

  Plaintiffs Jennifer and Robert Intravaia ("Plaintiffs") bring this action individually and on behalf of their disabled infant daughter, Skylar Intravaia ("Skylar"), against the Rocky Point Union Free School District ("School District"), Superintendent Michael F. Ring ("Ring"), and David Pearl, Esq. ("Pearl") ("collectively, "Defendants"), seeking to redress violations of their rights under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et seq.*, the American with Disabilities Act ("ADA"), 42 § U.S.C. 12101, *et seq.*, and 42 U.S.C. § 1983.

Plaintiffs allege that Defendants failed to provide Skylar with a free and appropriate public education ("FAPE") based on their failure to provide required special education services and based on the initiation of an impartial hearing to block and frustrate an investigation by the New York State Education Department ("NYSED").

Presently before the Court is Pearl's motion for an award of sanctions, or, in the alternative, an award of attorneys' fees and costs. For the reasons stated below, Pearl's motion is denied.

## BACKGROUND

**I.** *Factual Background*

Skylar is a disabled student who attends school within the School District and who is classified as having autism. (Compl. ¶¶ 3, 15.) More specifically, Skylar is a high-functioning eighth-grader who has Asperger's syndrome, "which is an autism spectrum disorder characterized by high cognitive function and low social/behavioral function." (*Id.* ¶ 20.) In light of her classified disability, the School District was required to provide her with special education and related services pursuant to an Individualized Education Program ("IEP") developed by the School District. (*Id.* ¶¶ 13, 21.) Skylar's IEPs have included services such as social worker counseling, summer therapy sessions, and special class learning labs and aides. (*Id.* ¶ 22.) As of October 4, 2010, Skylar's IEPs included the following services: a daily individual aide; weekly group counseling; monthly one-to-one counseling; and parent counseling and training four times yearly. (*Id.* ¶ 23.) On February 15, 2011, Plaintiffs consented to the removal of Skylar's individual aide. (*Id.* ¶ 24.) Plaintiffs claim, however, that, subsequent to February 15, 2011, Defendants failed to provide Skylar with the services they were required to provide under Skylar's IEP. (Compl. ¶¶ 25-26.)

2

According to Plaintiffs, in 2011, Defendants: (1) "[f]ailed to provide group services to Skylar on at least seven occasions"; (2) "[r]emoved the director of special education without notification"; (3) "[e]liminated all special education coordinators without notification"; (4) "[r]emoved the full[-]time autism consultant, Denise Valvo, who worked individually with Skylar"; (5) "[h]ired an autism consultant to work one day per week in November 2011 who ha[d] no individual contact with Skylar"; (6) "[d]ivided Ms. Valvo's former responsibilities and duties as a full[-]time autism consultant between the school's social worker and psychologist"; (7) "[h]ired unqualified counselors who ha[d] no training on how to work with autistic children"; (8) "[p]unished Skylar by sending her back to class on more than one occasion for failing to answer a question correctly during a counseling session"; (9) "[f]ailed to coordinate and communicate with Plaintiffs, resulting in Skylar having missed over 30 days of gym, a required class"; (10) "[f]ailed to adhere to the services that the [School District] was required to provide to Skylar, per her IEP"; and (11) "[p]rovided 'progress reports' that d[id] not properly measure the goals set by Skylar's IEP," resulting in Plaintiffs being unable to accurately track Skylar's progress. (*Id.* ¶ 26.)

Jennifer Intravaia wrote to Ring on October 20, 2011 in order to advise him of the above issues and concerns. (*Id.* ¶ 27.) The following day, the School District's Interim Special Education Coordinator, Andrea Moscatiello ("Moscatiello"), responded by stating that Skylar's "services were in place and remain[ed] the same," and advised Jennifer Intravaia "to contact [Skylar's] sponsor teacher." (*Id.* ¶ 28 (internal quotation marks omitted).) Jennifer Intravaia again raised her issues and concerns at a Board of Education meeting on November 21, 2011, and when she subsequently met with Ring, Moscatiello, and other School District officials regarding compliance with Skylar's IEP on November 30, 2011. (*Id.* ¶¶ 29-30.) Jennifer

Intravaia attended another Board of Education meeting on December 19, 2011 to once more implore the School District to reinstate Skylar's services, including the full-time autism consultant.  (*Id.* ¶ 34.)  On December 29, 2011, Jennifer Intravaia prepared and filed a complaint with NYSED that detailed the above violations.  (Compl. ¶ 38.)

On January 9, 2012, Pearl, as counsel for the School District, wrote to Plaintiffs indicating that the School District "had *sua sponte established* an 'impartial hearing' as to Plaintiffs, . . . with a 'proposed resolution' that an 'impartial hearing officer' 'issue an order stating that Free and Appropriate Education [wa]s being provided to [Skylar], that her IEP [wa]s appropriate, and that she [wa]s receiving all related services . . . .' " (*Id.* ¶ 42.)  According to Plaintiffs, the hearing was intended by Defendants to: (1) "interfere with and prevent Plaintiffs from exercising their rights to carry out their complaint to the New York State Education Department against Defendants"; (2) "block the investigation by the New York State Education Department"; (3) "retaliate against Plaintiffs for Plaintiffs['] having exercised their rights in connection with Skylar's disability"; and (4) "allow Defendants to continue to fail to adhere to the IEP and the services required under the IEP while maintaining an appearance that the Defendants [we]re actually in compliance with it."  (*Id.* ¶ 44.)

## II. *Procedural History*

On March 14, 2012, Pearl requested a pre-motion conference in anticipation of filing a motion to dismiss and to seek sanctions for "[P]laintiffs' attorney's [claimed] patently frivolous conduct of naming Mr. Pearl as a defendant in this action; and . . . plaintiffs' attorney's [claimed] deliberate deceit upon this Court in violation of New York State Judiciary Law § 487."  (Docket No. 6.)  On March 29, 2012, Plaintiffs filed a letter opposing Pearl's request.  (Docket No. 9.) Thereafter, on April 3, 2012, the Court ordered a briefing schedule only as to Pearl's motion to

dismiss. On June 12, 2012, Pearl filed a motion to dismiss the Complaint, alleging that the Court lacked subject-matter jurisdiction. However, in the same motion, Pearl also sought Rule 11 sanctions. (Docket No. 12.)

By Memorandum and Order, dated January 30, 2013 ("January 2013 Order"), the Court granted Pearl's motion to dismiss, and denied, without prejudice, Pearl's motion for Rule 11 sanctions.[1] Because Pearl filed only one motion, which sought both to dismiss the Complaint and to impose sanctions, his motion for sanctions was procedurally defective under Rule 11(c)(2). (*See* Docket No. 22 at 16.) In denying Pearl's motion, without prejudice, the Court observed, parenthetically, that "it [wa]s questionable whether defendant Pearl [would be able to] satisfy the 21-day 'safe harbor' provision of Rule 11 since [P]laintiffs no longer ha[d] the ability to withdraw or correct the challenged claims and contentions as the Complaint ha[d] been dismissed." (*Id.* at 17 n.5.) Thus, the Court noted that "[i]t . . . expected that defendant Pearl w[ould] address th[e] issue should he still seek sanctions against [P]laintiffs and their counsel." (*Id.*)

Following the January 2013 Order, Pearl filed a pre-motion conference letter requesting leave to renew his motion for sanctions pursuant to Rule 11, or, alternatively, to receive an award of reasonable attorneys' fees and costs pursuant to 28 U.S.C. ¶ 1927. (Docket No. 25.) Plaintiffs opposed Pearl's request to move for sanctions against them post-dismissal, and requested leave to cross-file a Rule 11 sanctions motion against Pearl should Pearl file his anticipated motion, claiming that Pearl's filing of a Rule 11 sanctions motion "[wa]s sanctionable conduct in its own right." (Docket No. 26 at 1, 3.) In response to Pearl's request, the Court set a briefing schedule for the parties to follow. The Court denied, without prejudice, however, Plaintiffs' request to file

---

[1] The Court's January 2013 Order also granted a motion to dismiss that was filed by the School District and Ring.

a motion seeking sanctions, noting that Plaintiffs could seek to file a motion for Rule 11 sanctions after Pearl's instant renewed motion was presented to the Court if Plaintiffs still believed that a Rule 11 sanctions motion was warranted. Pearl filed the instant renewed motion on May 17, 2013.

## *DISCUSSION*

**I.** *Pearl's Request for Rule 11 Sanctions*

Pursuant to Rule 11(b), by signing a "pleading, written motion, [or] other paper" that is presented to the Court, an attorney certifies that, "to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances":

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and]
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b).

In addition, Rule 11 requires that a motion for sanctions "be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). Once such a motion is served, it may not be filed with the Court "if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." *Id.* Any motion seeking Rule 11 sanctions that does not comply with these provisions must be denied. *See Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 51 (2d Cir. 2008) (affirming district court's denial of Rule 11 motion where defendants "failed to make a separate motion for sanctions under Rule 11");

6

*Castro v. Mitchell*, 727 F. Supp. 2d 302, 306 (S.D.N.Y. 2010) ("A motion that fails to comply with the [21-day] safe harbor provision of Rule 11 must be denied.").

At issue in this case is whether Rule 11(b)'s safe harbor provision requires the service of a separate motion for sanctions more than 21 days prior to the filing of the same motion, or whether the service of a motion for sanctions, which was procedurally improper as it was not prepared as a separate motion, may nonetheless satisfy Rule 11's safe harbor provision if it was served more than 21 days prior to the filing of a separate motion for sanctions.

As discussed above, Pearl's first motion for sanctions was denied by the Court as procedurally improper because it was filed in conjunction with his motion to dismiss, rather than as a separate motion. Moreover, it is undisputed by the parties that the instant motion filed by Pearl has properly been filed as a separate motion for sanctions. The dispute as to the procedural adequacy of the instant motion therefore revolves around Pearl's contentions that he satisfied Rule 11's 21-day safe harbor provision "as a result of having served the prior motion more than 21[] days before filing that motion," and that "he is not required to re-satisfy the 21-day rule upon re-filing the instant motion for sanctions." (Def.'s Mem. at 1.)

In support of his position, Pearl cites *Holgate v. Baldwin*, 425 F.3d 671 (9th Cir. 2005) and *Johnson v. Univ. of Rochester Med. Ctr.*, 715 F. Supp. 2d 427 (W.D.N.Y. 2010), *aff'd*, 642 F.3d 121 (2d Cir. 2011). (Def.'s Mem. at 3.) However, the Court does not find these cases persuasive given their factual and procedural differences from the instant case.

For instance, in addressing the significance of *Holgate*, Pearl asserts:

> In *Holgate*, the Ninth Circuit was faced with a situation where one defendant, Baldwin, had served upon plaintiffs' attorney, Levinson, a letter and a copy of the motion he intended to file if the plaintiffs did not remove him as a defendant or cure the deficiencies in the legal claims against him. Baldwin filed the motion more than 21-days later, only to have the motion denied without prejudice while the District Court allowed Mr. Levinson to withdraw as counsel. Seven months

> later, Baldwin simultaneously served Levinson with a renewed sanction motion and re-filed the motion[](without waiting an additional 21 days before filing). The District Court ordered Mr. Levinson to pay $12,000 in sanctions to three sets of defendants, and the Ninth Circuit affirmed . . . .

Def.'s Mem. at 3-4; *see Holgate*, 425 F.3d at 678. In addition, Pearl argues that the Ninth Circuit affirmed the district court's decision because "[t]here was no need for Baldwin to satisfy a second safe harbor period when he re-filed his Rule 11 motion in 2003." (Def.'s Mem. at 4 (quoting *Holgate*, 425 F.3d at 678).) As a preliminary matter, it is noteworthy that the plaintiffs' counsel in *Holgate* conceded that the defendant, Baldwin, had satisfied Rule 11's safe harbor provision. *Holgate*, 425 F.3d at 678. Moreover, the initial motion for sanctions filed by Baldwin in *Holgate* was not procedurally defective, unlike the initial motion for sanctions filed in this case, and, importantly, the initial motion filed by Baldwin was a separate motion for sanctions, as was required by Rule 11. *See id.* In fact, the initial motion for sanctions in *Holgate* was denied without prejudice so as to permit the plaintiffs' counsel to withdraw, not because the motion was procedurally defective. *Id.* Thus, Rule 11's requirement that a separate motion for sanction be served upon the non-movant more than 21 days prior to the filing of the motion was arguably satisfied by the service of the initial motion for sanctions in *Holgate*. No such service of a separate motion for sanctions was effectuated in this case.

The decision in *Johnson* also provides little guidance to the Court despite Pearl's arguments to the contrary. In that case, the defendants sought Rule 11 sanctions with regard to claims that were proposed in the plaintiff's pending motion to amend the complaint. *Johnson*, 715 F. Supp. 2d at 429. The defendants requested sanctions "in their papers opposing [the] plaintiff's motion to amend." *Id.* However, the plaintiff did not submit a reply in response to the defendants' opposition papers or otherwise respond to the defendants' request for sanctions in the eleven months that followed. *Id.* Moreover, the plaintiff "continued to press the frivolous

claims *even after they had been dismissed.*" *Id.* Under those circumstances, the district court found that the plaintiff and his counsel had been given appropriate notice of the deficiencies in the plaintiff's proposed claims and of the risk of Rule 11 sanctions, and that the defendants had more than 21 days to withdraw the frivolous claims, but failed to do so. *Id.* In addition, the district court observed that the "plaintiff's dogged attempt to resurrect the frivolous claims" indicated that the plaintiff would not have withdrawn the frivolous claims even had Rule 11 been strictly followed by the defendants. *Id.* While the Second Circuit affirmed the district court's decision, it did "not reach the [district] court's . . . Rule 11 sanctions ruling." *Johnson*, 642 F.3d at 125. This Court, however, respectfully disagrees with the district court's finding in *Johnson* that the defendants' opposition papers provided adequate written notice for purposes of Rule 11 given that Rule 11's requirements are strict. *See Perpetual Sec., Inc. v. Tang*, 290 F.3d 132, 142 n.4 (2d Cir. 2002) (observing the "strict procedural requirements of [Rule 11]"); *Holgate*, 425 F.3d at 678 ("We enforce [Rule 11's] safe harbor provision strictly"). Nonetheless, it is noteworthy that the court in *Johnson* concluded that the plaintiff would not have withdrawn his claims even if the defendants had strictly complied with Rule 11's requirements; under such circumstances, "the Second Circuit has indicated that if a party clearly would not have corrected the paper if given the full 21 days, sanctions may still be assessed." 1 Civil Practice in the Southern District of New York § 5:25 (2d ed. 2014); *see also Pannonia Farms, Inc. v. USA Cable*, 2006 WL 2872566, at *5 (S.D.N.Y. Oct. 5, 2006) (sanctioning counsel despite fact that 21-day "safe harbor" had not passed where "plaintiff's counsel would have persisted in litigating th[e] case whether or not they were served with a separate Rule 11 motion and granted a formal 21-day safe harbor period"). By contrast, here, there is no clear indication that Plaintiffs would have maintained any frivolous claims had they been properly served with a separate Rule 11

9

motion. Indeed, unlike the plaintiff in *Johnson*, Plaintiffs in this case did not continue to pursue their action once it had been dismissed.

Here, the Court is more appropriately guided by the more recent Second Circuit decision in *Star Mark Mgmt., Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, Ltd.,* 682 F.3d 170 (2d Cir. 2012), in which the Second Circuit confirmed that "[t]he safe harbor provision is a strict procedural requirement." *Id.* at 175. Importantly, the Second Circuit made it clear that "service of a *separate* Rule 11 motion [is necessary] to trigger the 21-day safe harbor period." *Id.* (emphasis added).

To be sure, Rule 11's language unambiguously provides that service of a separate motion for sanctions more than 21 days prior to the filing of the same motion is required. Namely, Rule 11 provides, in relevant part, that the "motion for sanctions must be made separately from any other motion" and "[t]he motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets." Fed. R. Civ. P. 11(c)(2). Thus, the rule contemplates the service of a separate motion for sanctions followed by the filing, after 21 days, of the same motion. Indeed, Congress's intent that these steps be strictly followed is evident. *See* Fed. R. Civ. P. 11 advisory committee notes (stating that "[t]he rule provides that requests for sanctions must be made as a separate motion," "[t]hese provisions are intended to provide a type of 'safe harbor' against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position," and "the 'safe harbor' period begins to run only upon service of the motion"). Pearl did not comply with these requirements in this case.

Moreover, while a court retains jurisdiction to determine Rule 11 sanctions even when a case has been dismissed for lack of subject matter jurisdiction,[2] as was the case here, a party's failure to properly timely serve a separate motion for sanctions prior to the dismissal of the case is fatal to that motion. In this regard, Congress has stated that "a party cannot delay serving its Rule 11 motion until conclusion of the case" as it would defeat the purpose of the safe harbor provisions. Fed. R. Civ. P. 11 advisory committee notes; *see also In re Pennie & Edmonds LLP*, 323 F.3d 86, 89 (2d Cir. 2003) ("[Rule 11] motions have been disallowed as untimely when filed after a point in the litigation when the lawyer sought to be sanctioned lacked an opportunity to correct or withdraw the challenged submission."). Thus, an imposition of sanctions pursuant to Rule 11 would be inappropriate here, where Pearl's first motion for sanctions was defective, and where Pearl now attempts to seek sanctions in a separate motion that was not served upon the Plaintiffs, was filed after the case had been dismissed, and where Plaintiffs cannot possibly cure any deficiencies. For these reasons, Pearl's motion for sanctions pursuant to Rule 11 is denied.

## II.     *Pearl's Request for Attorneys' Fees and Costs pursuant to 28 U.S.C. § 1927*

The Court may award sanctions against an attorney pursuant to 28 U.S.C. § 1927, which prohibits an attorney from "unreasonably and vexatiously" multiplying the proceedings. However, these sanctions may be awarded only "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose," and where the court "find[s] bad faith." *Johnson*, 642 F.3d at 125 (citation and internal quotation marks omitted).

In seeking an award of sanctions pursuant to 28 U.S.C. § 1927, Pearl argues that "[P]laintiffs' attorneys unreasonably and vexatiously multiplied the proceedings by naming Mr.

---

[2] *See Metro. Life Ins. Co. v. Kalenevitch*, 502 F. App'x 123, 125 n.1 (3d Cir. 2012) ("It is settled that a district court retains power to hear a sanctions motion after determining that it lacks jurisdiction over the case.").

11

Pearl as a defendant and by asserting a legal position that was patently frivolous in the face of all of the warnings placed before them." (Def.'s Mem. at 18.) In addition, Pearl asserts that "[P]laintiff[s] did not discern which causes of action were interposed against which defendants, causing the defendants to have to respond to each and every cause of action, thereby 'multiplying' the proceedings." (*Id.*) However, even if the Court were to credit these assertions, Pearl has failed to show that the actions of Plaintiffs' attorneys were undertaken in bad faith and were so completely meritless as to compel a finding that they were undertaken for an improper purpose. *See also Rates Tech., Inc. v. Mediatrix Telecom, Inc.*, 2012 WL 948661, at *2 (E.D.N.Y. March 19, 2012) (observing that "poor legal judgment" does not constitute bad faith for purposes of Section 1927 (quoting *Salovaara v. Eckert*, 222 F.3d 19, 35 (2d Cir. 2000)) (internal quotation marks omitted)); *Van Eck Assocs., Inc. v. Reynolds Philippine Corp.*, 1999 WL 562005, at *1 (S.D.N.Y. Aug. 2, 1999) (observing that mere "careless" conduct "does not rise to the level of bad faith required by the Court to . . . levy sanctions pursuant to 28 U.S.C. § 1927"). As such, Pearl's request for attorneys' fees and costs under Section 1927 is denied.

## CONCLUSION

For the reasons stated above, defendant Pearl's motion for an award of sanctions, or, in the alternative, an award of attorneys' fees and costs is denied.

**SO ORDERED.**

Dated: Central Islip, New York
December 22, 2014

/s/
Denis R. Hurley
United States Senior District Judge